We'll hear Pinto v. City of New York. Good morning. Good morning. May it please the Court, Jillian Castell-Stega for Appellant Carleen Pinto. We ask, just so I can make sure I've reserved the two minutes for rebuttal. You got it. We ask this Court vacate Judge Mann's decision granting summary judgment based on an impermissible weighing of disputed facts under Tolan v. Cotton. Well, we're also doing this, we're hearing this de novo too. So, it seems to me that you have some difficulty with the false arrest. Your claims with respect to the false arrest. Because the law there seems to be that if there was any reason to arrest your client, that the false arrest claim won't stand. And it seems to be conceded that she was off the sidewalk at more than one point. And so I think you have some trouble there. But with the malicious prosecution case, I think you may have a chance to defeat summary judgment. Because I think that there are genuine disputes as to material facts with respect to what the instruction was to Ms. Pinto or to the demonstrators and whether or not she complied with the instruction. I'm wondering if you agree with me and if you'll tell me why. Of course, Your Honor, I do agree with you. I believe that the district court decided in contravention of poventude and other cases that based on probable cause for an uncharged violation that she dismissed, and I think appellees agree in error, the malicious prosecution and fabrication of evidence claims, although there was no finding as to probable cause for the two charged violations. And in this case, in fact, appellee conceded that there was no order to disperse. And that's in the Rule 56-1 statement. But additionally, Ms. Pinto, other protesters present, and other officers, including the officer, Sergeant William Liang, who is standing directly in front of Ms. Pinto and instructing her to step back onto the sidewalk, stated that the only order issued at the time was an order to, in fact, step back on the sidewalk and that she complied within seconds, stepped back onto the sidewalk, and was lawfully standing on the sidewalk when moments later, nonetheless, Sergeant Diaz pulled her off the sidewalk to arrest her. She had been told to get back on the sidewalk several times. She got off the sidewalk several times. So, Your Honor, the facts are disputed on this point. Ms. Pinto had been engaged in the marching and protesting for hours prior to her arrest. She herself said that she'd gotten off the sidewalk several times. So I don't know how that's disputed. That's out of her mouth, and so there's no dispute that she said it and that therefore she stuck with that. That's true, Your Honor. However, Ms. Pinto conceded that she stepped off the sidewalk only when crossing at intersections during the course of the march, possibly hours earlier and before ever being in the presence of Sergeant Diaz, and additionally that she only otherwise stepped off the curb when the volume of the 200 and 300 protesters displaced her momentarily and that whenever the police issued an instruction, she complied, and her testimony continues. I think so, actually, because she evaded the question by saying we crossed a lot of intersections, and the next question was, well, what about not at intersections, just sort of moving along the process of the march, were there times you were on the street? Yes. That's correct, Your Honor. So it's not just at intersections, as you said. That is correct, Your Honor. We concede that Ms. Pinto did, in fact, step into the street. And it's more than once. It's more than once. However, required under both the disorderly conduct statute, she must have obstructed actual vehicular traffic. There was vehicular traffic. I mean, the police had cars going. You could see it in the video. How can you say there was no vehicular traffic? Well, in that particular video, so at West 56th Street, Ms. Pinto stepped only into the shoulder lane of West 56th Street. Are you saying that in the whole distance between Union Square and 57th Street, there wasn't any vehicular traffic? Well, she didn't step off the street and walk in the street. We saw her step off the street when there was vehicular traffic. Well, it wasn't the fact that the criminal complaint doesn't talk about 48th Street. It talks about 12th Avenue and 57th Street and West 56th Street. That is correct, Your Honor, and that is a very important point. The location of where this offending conduct took place is, in fact, an element of all of the crimes that were charged and the vehicle traffic law violation. And so for Sergeant Diaz to allege that— Doesn't the video show her stepping off the sidewalk in those locations? The video only shows Ms. Pinto stepping off the sidewalk into 12th Avenue, the shoulder lane of 12th Avenue, and it's marked with white lines, which are visible in the record, and briefly standing, having stepped perpendicular to the curb for mere seconds. Appellee Sergeant Diaz concedes that he never saw her feet, that she stepped one foot off the curb, was one foot from the curb, and immediately stepped back within seconds. Importantly, under disorderly conduct, you must have an intent to cause— Were her arms linked? Her arms were not linked until she returned to the sidewalk, and that is an error, actually, in Appellee's briefing. They allege that the video shows that she walked in the street with her arms linked, and it does not. She only linked arms with the protesters next to her after returning to the sidewalk, and again was only briefly stepping foot in the shoulder lane after seeing that the street had been blocked, arguably. There are disputed facts in the records on this point, and there is no traffic near her that she, in fact, blocked. The only—Appellee struggled to find any traffic. If you walk in the middle of the street, you are blocking traffic, whether the traffic is light or heavy or whether it's police cars or anything else. Is there any evidence on the record that she was walking in the street? There's absolutely no evidence that she walked in the middle of the street. She has feet, and she was not on the sidewalk. She didn't have to walk in the middle of the street. 1156 doesn't say anything about the middle of the street. It says walking in the street. So whether it's one foot or 10 feet, that's irrelevant. Well, so actually— And you have no case in New York under New York law interpreting the statute otherwise. Do you? So, yes, Your Honor. You do not. You have cited no case in New York as to what has to be done, whether walking parallel or anything to that effect. You have a theory about that it has to be walking parallel, but no case in New York supports that theory. If I may briefly, Your Honor, there is actually a district court case in which it was determined— a New York state court determination of New York law, which is what I would prefer. Is there one? I don't have a New York state court case. Neither do I. But if I may very briefly, Your Honor, I think that Judge McMahon's decision, very importantly as to the VTL, probable cause for the VTL violation, she did not establish the elements of the VTL violation 1156. And the two elements of that violation are that there has to be a walking along and that the sidewalks have to be able to be used with safety. And in not establishing that either of those elements were met, she expanded the law so broadly that it was in contravention of Shuttlesworth and Colander. It rendered the interpretation of the statute unconstitutional, as applied to Ms. Pinto. And so it is very necessary that Judge McMahon or the court determine whether or not Ms. Pinto, in fact, had walked along the street, the roadbed, where the sidewalk could be used with safety. And, in fact, the lower court, Judge McMahon, found that the video does not show plaintiff walking along the roadbed at any time. And that's at special appendix page three. So although the court found that she had not, there was no evidence apart from Sergeant Diaz's own testimony to establish the elements of this violation, she nonetheless found that there was no genuine dispute of fact. And her words, again, were that the differences in the record constituted minor discrepancy. And that's, again, an impermissible weighing of disputed facts to establish probable cause where that, you know, she's sitting in the role of the fact finder and that's reserved for the jury in this. You've reserved rebuttal. I have reserved rebuttal. Thank you, Your Honor. Good morning. I'm Mackenzie fellow and I represent the city and officer Diaz. I'm going to ask you the same question. Sure. The same. The question is, is there a. Material dispute. As to what the officers actually instructed. The protesters to do. No. Ms. Pinto admitted at her deposition. That she continuously heard them ordering the protesters to stay on the sidewalk, but you can put that completely to the side. You don't even need to reach that issue. Okay. Sure. So when in your. Response to. The plaintiff's local rule. 56.1. Statement of facts. They say. There was no order to leave or disperse. And you say undisputed. What does that mean? I think we were. Conceding that the word disperse was not used. We were not. It's a factual. This is a. Facts. It's not about a legal conclusion about what words need to be used. Sure. So it's the facts. It's the fact. Yes. That these. Protesters were never. Directed by the police officer. To leave or disperse. Yes. He did that. Then you say. In response to. After complying with the request. Ms. Pinto stood silently on the sidewalk. And you say. Undisputed. So you. As far as I can tell. You have conceded. That they were never told to leave or disperse. And that she complied. With whatever the order was. We agree that the word disperse was not used. And maybe the word leave wasn't used either. But everyone agrees. It is completely undisputed. That these protesters were continuously told to stay on the sidewalk. And out of the street. Where do you find that? Ms. Pinto admitted it in a position. Part of the deposition that I believe was read. She says in her. It wasn't. They weren't told to stay on the sidewalk. They were told to get out of the street and get on. There's a distinction here. The distinction is. Were they told. Stay on the sidewalk or you're going to be arrested. Because by the way. That is what. Officer Diaz says in his criminal complaint. He says. That. I'm allowed to get out of the street. And onto the sidewalk. Or they would be subject to arrest. That's what he says. Yes. He says that in his deposition. You have to say that. He really doesn't say that. Why does he have to say that? Why does he have to tell people to obey the law? For them. If he tells him to get back on the street. Does he then have to say. And you're going to be arrested. If you don't. For him to be able to arrest him. I don't think he does. That's correct. But in any event. You can put all of this to the side. Because the video shows her blocking traffic. And so even if. You don't need probable. I have seen the video. If I were going to judge what this video shows. I would say that it shows the police officers. Blocking traffic. The scooter. The scooter can't go. Can't move. Because there's a police officer in the way. Not because Miss Pinto is in the way. Actually. The traffic that's being blocked. Is the police vehicle. So if you look at clip 2. And you push play. And then you push pause immediately. You see a wide open shot of 12th Avenue and 56th Street. There is nothing blocking traffic. Then you push play. The scooters are moving north on 12th Avenue. Beep beep beep beep beep. They're all pushing their horns. And then they come to a group of protesters. And they have to stop. Because the protesters are standing in the street. Miss Pinto is in that group. Miss Pinto is in that group. With her arms linked with other protesters in the street. With her eyes closed. Defiantly standing in the street. Having heard the police say over and over again. Stay on the sidewalk. I admit I didn't see this. I saw a police officer blocking the scooter. It's short. But I watched it. And I saw that. I would ask the court to watch it again. And maybe very slowly. Or a couple of times. The first few seconds. The officers are driving north on 12th Avenue. That is traffic. They were forced. They were beeping their horns. They come to a group of protesters standing in the street. As long as there was arguable probable cause to believe that Miss Pinto was blocking traffic. Which the video proves that there was. Then this case needs to be dismissed. You don't even need to address the other charges. Because as long as there was one point. Since I saw something different than what you saw. Why isn't there a dispute of material? Honestly, I'm not really sure how to respond to that. Because the video very clearly shows the traffic moving up 12th Avenue. I would just ask the court to review the video again. I don't mean to be disrespectful. If the court really concludes that the video doesn't show that. Then maybe there is a fact dispute. We're talking about the same video. You're talking about exhibit. I think it's. Page reference to the appendix. There's a DVD attached to. I think it's page 126 or something. I'm not sure exactly. It has two clips on it. They show the exact same thing from two different perspectives. One from the view of the sidewalk. And one from the view of the street. The one from the view of the street. You can see that the cars are moving north. And there is no. They have cited no case that. Would clearly establish that an officer who sees protesters. Standing in the street with their eyes closed. Like defiantly daring the police to arrest them. Let me see if I can get this straight. As far as the charge having to do with. Refusal to comply with a lawful order to disperse. You're conceding that there could be a dispute with respect to material facts. No, I. We think actually the evidence is very clear. Her admissions and the video evidence. Prove. But her admission that she heard them continuously saying stay on the sidewalk. That she did in fact on more than one occasion walk in the street after hearing that. And the video evidence showing her standing in the street. After she concedes that she heard those repeated instructions. Anywhere near 12th Avenue and 57th Street. Okay. So that's another point. Her. She submitted in response to our motion. An affidavit that contradicted her. Deposition testimony at her deposition. She said she didn't remember the route. That she took. But she heard them continuously saying stay on the sidewalk. Now suddenly after we file our motion. She remembers. Oh, I walked up 12th Avenue. And they weren't making this announcement there. But that's completely contradictory to what she said in her deposition. What did she say in her deposition? She said I heard them continue. This is her word. Continuously instructing the protesters to stay out of the street and on the sidewalk. That she nonetheless walked in the street. The video shows her standing in the street. Arms linked. Arms linked. And in fact because I think four. And as they all take steps backwards onto the curb. You can see the first one. They do have their arms linked. Because when the first one steps up onto the curb. He sort of pulls them up. Yes. Their arms are linked. Her eyes are closed. She's not trying to walk in the street because the sidewalk is too crowded. She's standing directly in front of the police. Who she admits told her to stay on the sidewalk. She is defying an order to stay on the sidewalk. The law is clear that orders to stay in one area and out of another area. Or to move from one area to another. Are in order to disperse. Or at least arguably are in order to disperse. I'm sorry? Why wasn't she complying with the instruction that was given at 57th Street? Sure. The cops shouldn't have to tell you over and over again. People shouldn't have to. And this court has said in a case called Shamir. They ordered a protester to leave outside of City Hall Park. And he did leave briefly. But then he came back. And so they arrested him. Because he had not in fact complied. Temporary compliance. This is not real compliance. They don't. She can't just jump on and off. And then every time they say get back on. She gets back on. And then they have to just let her keep doing it. She violated their orders. And I would also just like in closing. To say that it's easy to watch these videos in the comfort of our offices. And say maybe this arrest wasn't necessary. But that is not the standard here. To the officers on the street that night. They didn't know how the night was going to turn out. They're faced with hundreds of people on the sidewalk. Very close to the west side highway. Some of them, like Ms. Pinto, seemed very determined to be in the street. Not far from here, protesters that same night blocked the Holland Tunnel. It is for the protesters' own safety to keep them on the sidewalks. And also for the convenience of the citizens of this city. That traffic keep moving. This was a good arrest. And the officer had at least arguable probable cause. Sufficient to give him qualified immunity. We'll hear rebuttal. Thank you. Thank you. Thank you, Your Honors. If I may briefly first. I would actually also ask the court to review the video. I think that it is being mischaracterized again. There are a number of clips. Which one is. There are at least six clips that I've looked at. So tell me which one it is you want me to look at. It's in appendix at. In the joint appendix at 198. All right. So it's Exhibit A. It's Exhibit A. There are two videos. Exhibit A. And there are two clips within it. Yes, Your Honor. Right? Yes. All right. I have them. And I'll. On my computer. Thank you. Thank you, Your Honor. And additionally, I'd like to address Your Honor's comments about. Why she should be instructed not to violate the law. Because I believe that is an important point in this video. You see that she's actually complying with the instruction that she is giving. There's absolutely no objective reason to believe that she has the intent. To commit any violation whatsoever. The question would be that if the video shows her standing in 12th Avenue. Or 12th Street. Is it 12th Street or 12th Avenue? 12th Avenue. 12th Avenue. If it shows her standing in the street after she said that continuously she was told not to stand in the street. And her arms are linked with other individuals saying there's traffic there. That she's in violation of the statute. So. Would you concede that? I believe she's not in violation of the statute. Well, that's because of the reading. On those facts alone. You would need to establish that she entered active lanes of traffic. Or she walked along the sidewalk. Along the street. Along as opposed to walking. You're saying perpendicularly. She merely stepped perpendicular to the curb. A foot. I told you that she said she had continuously been ordered not to walk in the street. And on that point, actually, Your Honor. I believe that appellees are also mischaracterizing the record. That Ms. Pinto said that she was continuously at points during the march. Told to get on the sidewalk. And that she and another protester she was marching with continued to comply with whatever instructions they were given. It's very easy to see, you know, what she was doing. Because she was carrying her sign upside down. So it's quite easy to identify the person of presumably the least intelligence in the group. And see what they were doing. So she sort of identifies herself. Yes, Your Honor. I believe you can identify her in the video. And, again, she is not engaging in any conduct that objectively indicates an intent to cause a public disturbance or public alarm. She merely stepped briefly at the intersection. But, you know, four people step out. Then another four people step out. Then 30 people step out. Then there's the west side highway. Which is about eight or ten lanes across. And before you know it, they're all having a very good time. Everybody is in peril. Including the police. That may be. I mean, if you look at it, you don't have to say that that's what your client was doing.  And that large numbers of people, including the people who were walking with your client, peacefully protesting, were going to be swept out into the street. And be subject to peril. I think that's a very important point, Your Honor. Because actually here in this case, the officers did exactly what, based on that belief, instructed the protesters to return to the sidewalk. And it is undisputed that all of the protesters complied with the order. Immediately. After they violated the law. They obeyed the law. You know? I mean, you stop somebody for speeding. And you say, well, yeah, I was speeding back there. But, you know, when I saw you, I stopped speeding. That doesn't get you any place, does it? So in this particular case, the protesters had approached West 56th Street. And it appeared, as appellees have conceded again, that the officers at many intersections blocked traffic to allow the protesters to cross. That is undisputed. These protesters approached this particular intersection, observed the many police vehicles in a line. We went through the intersection thing before. You really can't get away with that. I read the passage. And the lawyer for the other side made plain, we're not talking about intersections. And to say, were you in the street? You say, yes, I was in the street crossing intersections. Well, everybody is in the street when they cross intersections. Your client knew perfectly well that's not what was being asked. It was a cute and evasive answer. And it was corrected. And then she said, one word, yes, period. Your Honor, I agree with that, except that that was in reference to hours earlier. And that she had entered the street at times during a multiple-hour march. And she was not being called in the criminal complaint. Sergeant Diaz specifically stated that her offending of conduct had occurred between West 56th Street and West 57th Street. And it certainly implicates due process concerns where this officer alleged that her offending conduct occurred on this particular block. And then after the revelation of video evidence that directly contradicts his testimony and his sworn statement of facts in the criminal complaint, he then alleges, oh, actually, I saw Ms. Pinto. Maybe she did this conduct ten blocks earlier, hours earlier. I don't know. It doesn't matter.  We thank you both. Thank you, Your Honor.